[L. A. No. 9154. Department One.—February 17, 1928.]

JAMES ROBERT HIGGINS et al., Appellants, **v.** SECURITY TRUST & SAVINGS BANK (a Corporation), Respondent.

Arnold Praeger for Appellants.

Newlin & Ashburn and W. C. Mathes for Respondent.

SEAWELL, J.—The above-entitled action was commenced in the superior court in and for the county of Los Angeles by the assignees of a contract to recover damages from the vendor of the property alleged to have been suffered by said assignees by reason of statements negligently made by said owner to said assignees as to the condition of the title of said real property. The facts are stated below:

The second amended complaint, which the trial court held did not state a cause of action, and accordingly entered a judgment of dismissal of the action, from which judgment this appeal was taken, alleged that appellants' assignor, Charles S. M. Segelbaum, entered into a contract with respondent, Security Trust & Savings Bank, for the purchase of a certain described lot or parcel of real property situate in the county of Los Angeles. One George W. Markens was the agent of said Segelbaum. That on or about January 30, 1925, Segelbaum assigned said contract and his interest therein to appellants, who paid to said Segelbaum as a consideration therefor the sum of $3,000. That prior to the assignment of said contract and prior to the payment of said sum of $3,000 by appellants, appellants and said George W. Markens called at the office of respondent corporation. That the purpose of Markens' visit was to pay respondent the balance due from Segelbaum to respondent on account of said contract of purchase "and for the further purpose of the plaintiffs [appellants] ascertaining from defendant [respondent] that said balance was paid and ascertaining that the title to said lot was free and clear of encumbrances and to arrange with defendant [respondent] for a deed to said property conveying the title thereof to plaintiffs as joint tenants and to secure a certificate of title showing the title thereto vested in plaintiffs free and clear of encumbrances." That one T. H. Boysen was assistant trust officer of said respondent corporation. That Markens "talked with said Boysen with regard to the transfer of the interest of said Segelbaum in said lot to plaintiffs . . . the plaintiffs informing said Boysen that they were paying the said Segelbaum cash for his interest in said lot, and that they wanted a deed from defendant to said lot with themselves

named as grantees . . . and that they desired defendant to furnish a certificate of title showing the title to said lot vested in plaintiffs free and clear of all encumbrances, and that they wanted to know if the title to said lot was clear before they paid the said sum of $3,000 to said Markens. . . . That when advised of the fact that the plaintiffs were buying said contract for the purchase of said lot . . . and that they wanted to know if the title was clear . . . and that they desired a certificate of title showing the title . . . vested in them free and clear of encumbrances, the said Boysen stated he would ascertain if the title to said lot was clear; that before the payment of said $3,000 . . . the said Boysen undertook to ascertain if the title was clear, knowing that the plaintiffs were relying thereon, stated to the plaintiffs that the title to said lot was clear,'' and plaintiffs relying on said statement paid the sum of $3,000 to said Markens, agent of Segelbaum. That at said time Boysen accepted from plaintiffs the sum of $6.75 ''to cover the cost of recording the deed from defendant [respondent] to plaintiffs, conveying the title to said lot to them, and the charge for showing in said certificate of title the title thereto vested in the plaintiffs.'' The usual allegations in such cases, to the effect that the statements as to the title being clear and free from encumbrances were relied upon by plaintiffs and they would not have entered into the transaction but for their faith in said statements, follow. It was further alleged that subsequent to the payment of said $3,000 by appellants to said Markens, said Boysen informed appellants that a search of the title of said lot made by respondent disclosed that an action had been filed in the superior court in and for the county of Los Angeles prior to said payment and a *lis pendens* filed against said lot, and by reason thereof respondent was not able to convey a title free and clear of encumbrances.

It is plaintiffs' contention that Boysen, by stating to plaintiffs in the manner set out in the second amended complaint that said title was clear and free of encumbrances, failed to take or exercise ordinary, customary, or usual care in the premises.

Whatever may be said in support of the sufficiency of the allegations of the complaint as stating a cause of

action as above epitomized is, we think, put to rest by paragraph V of said second amended complaint, which purports to state the facts by which appellants were influenced to consummate said transaction. ██ Read in the light of the familiar rules of construction, which are to the effect that it is presumed that the pleader has stated his case as strongly as it can be stated in his favor, and that ambiguities must be resolved against the pleader, it would seem that the matter set forth in said paragraph V was sufficient to defeat plaintiffs' action. It is therein alleged: "That said Boysen . . . before stating to plaintiffs that the title to said lot was free and clear of encumbrances, *in that said Boysen called a Title Company on the telephone to ascertain if said title was clear,* instead of having title to said property searched by a Title or Abstract Company before stating that the title to said lot was free and clear of encumbrances when such search would have disclosed the existence of the said encumbrance against said lot, and the fact that such a search would disclose any encumbrance against said lot was, or should have been, known to the said Boysen, and that by reason of the carelessness and negligence of said Boysen as aforesaid, plaintiffs have been damaged in the sum of Three Thousand Dollars ($3,000.00)."

The inference from the foregoing quoted paragraph is that the only time Boysen's opinion was asked as to the condition of title was when the plaintiffs visited him in company with Markens, and it was then that he called the title company on the telephone in the presence of plaintiffs to obtain the information imparted by him, and that plaintiffs were fully informed as to the source and extent of his information on the subject. This construction is in harmony with the recital in paragraph III of said amended complaint, which alleges that Boysen, when asked by plaintiffs concerning the title "undertook to ascertain if the title to said lot was clear," etc. The inference is that he "undertook" to gain the information by the use of the telephone from said title company. It is wholly unreasonable to suppose that he would have had a search made during the visit of appellants to respondent's place of business. The amended complaint nowhere alleges that Boysen agreed to furnish plaintiffs with a certificate of title or agreed to have

the title searched in order to answer plaintiffs' question. It was not reasonable to expect that Boysen would have assumed so onerous a service gratuitously. Besides, there existed a valid and binding contract on the part of Segelbaum to purchase the property, and it was doubtless a matter of indifference with either respondent corporation or Boysen, its agent, whether Segelbaum did or did not assign his contract to plaintiffs. If it had been alleged that the transfer of Segelbaum's contract to appellants would have benefited respondent in any way, a different situation would be before us. But such is not the case.

Appellants state at the outset that the action is not based on fraud and concede that at the time of the commission of said negligent acts no privity of contract existed between appellants and respondent. It is also admitted that respondent's alleged undertaking was wholly gratuitous. Respondent was a stranger to appellants and owed them no contractual duty. The title record was as accessible to appellants as to respondent.

Appellants' sole point is that the amended complaint states a case of negligence, disassociated with any imputation of fraud. It is very doubtful if the major premise upon which appellants rely, to wit, that an action may be maintained against another for an injury occasioned by want of due care and skill in doing what one has promised to do, although there was no consideration for the promise, is present in the instant case. Does the amended complaint allege a promise on the part of respondent? Certainly it does not so far as the preparation of a certificate of title was concerned.

The inference to be drawn from the allegations of the pleading is that Boysen did not undertake or assume to do more than to make a telephonic inquiry of a title company as to whether or not the title was clear, and that appellants were satisfied to act upon the information thus obtained. It is nowhere alleged in the amended complaint that he misrepresented or misreported the title company's statement as to the condition of the title. It is a general rule, in the absence of a statute governing the particular case, that negligence without fraud, express or implied, is not actionable, and that negligence cannot arise when there is

no duty owing by the person charged to the person injured or a contractual relation existing between them.

Section 1975 of the Civil Code provides: "One who, without consideration, undertakes to do a service for another, is not bound to perform the same, but if he actually enters upon its performance, he must use at least slight care and diligence therein."

If, under the foregoing section, respondent in good faith inquired of an abstract and title company which would be likely to have knowledge on the subject as to the condition of the title of said property, as alleged in the amended complaint, this would certainly amount to the exercise of slight care.

The judgment is affirmed.

Curtis, J., and Preston, J., concurred.